UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRITZNER JUNIOR AUGUSTIN,<br>Petitioner,<br>v.<br>OTAY MESA DETENTION CENTER,<br>Respondent. | Case No.: 3:26-cv-04398-JES-BLM<br><br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241**<br><br>**[ECF No. 8]** |

Before the Court is Petitioner Fritzner Junior Augustin's ("Petitioner") First Amended Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241, as amended on August 14, 2026. ECF No. 8 ("FAP"). Respondents filed a Response on August 20, 2026, and Petitioner filed a Traverse on August 21, 2026. ECF Nos. 10-11. Having considered the parties' submissions, the record, and for the reasons stated below, the Court **GRANTS** the FAP.

## I. BACKGROUND

Petitioner, a native and citizen of Haiti, entered the United States on May 12, 2023, at Miami, Florida, after being approved for travel authorization under the CHNV parole program and inspected and paroled at that port of entry. FAP at 4. Petitioner applied for Temporary Protected Status ("TPS") in 2024, and that application remained pending as CHNV parole programs and TPS designations for Haiti were subsequently terminated. *Id*. The parties agree that Petitioner's grant of parole under 8 U.S.C. § ("Section") 1182(d)(5) terminated by operation of its two-year term in May 2025. ECF No. 10 at 2; FAP at 6.

On January 10, 2026, Petitioner was arrested by U.S. Immigration and Customs Enforcement ("ICE") in New York and placed in removal proceedings. FAP at 6. An administrative warrant for Petitioner's arrest, Form I-200, is dated January 10, 2026. ECF No. 10-1 at 2. Petitioner was, thereafter, transferred to the Otay Mesa Detention Center. FAP at 6. Petitioner sought asylum, and on June 3, 2026, an Immigration Judge granted Petitioner's applications for asylum, withholding of removal under INA § 241(b)(3), and withholding of removal under the Convention Against Torture. ECF No. 8-2 at 1. The Department of Homeland Security appealed that decision to the Board of Immigration Appeals on June 23, 2026, and that appeal remains pending. *Id*. at 4. Petitioner has not received a bond hearing at any point during his detention. FAP at 7.

Petitioner requests immediate release on three independent grounds: (1) the absence of pre-deprivation process before his parole-like liberty interest was revoked; (2) the absence of a warrant preceding his arrest; and (3) the insufficiency of a bond hearing in light of what Petitioner contends is a systemic erosion of immigration judge neutrality. ECF No. 11 at 2–5.

## II. LEGAL STANDARD

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and ... the traditional function of the writ is to secure release from illegal

custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A court may grant a writ of habeas corpus to a petitioner who demonstrates to be in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Traditionally, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, challenges to immigration-related detention are within the purview of a district court's habeas jurisdiction. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003).

The Due Process Clause applies to all persons within the United States, including noncitizens, "whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693. A noncitizen released into the community acquires a liberty interest in remaining free, the termination of which "inflicts a grievous loss." *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972). Courts evaluate the process due under the three-factor test of *Mathews v. Eldridge*: the private interest affected; the risk of erroneous deprivation; the value of added safeguards; and the government's interest. 424 U.S. 319, 335 (1976).

## III. DISCUSSION

Respondents raise two points: Petitioner is subject to mandatory detention under Section 1225(b)(2)(A); and, even so, they do not oppose a bond hearing under Section 1226(a), while opposing immediate release. ECF No. 10 at 2–4. Respondents do not address Petitioner's argument that his re-detention, after an extended period of parole-based liberty, violated due process. *See generally* ECF No. 10.

### A. Jurisdiction

The Court finds that Section 1252's jurisdiction-stripping provisions do not bar this habeas Petition, and that the prudential exhaustion requirement is excused. *See Martinez Lopez v. Noem*, No. 25-cv-2717-JES-AHG, 2025 WL 3030457, at *2–3 (S.D. Cal. Oct. 30, 2025).

//

//

**B. Detention Under Section 1225(b) and 1226(a)**

Section 1225(b)(2)(A)'s mandatory-detention regime targets noncitizens seeking admission at the border; it does not extend to an individual that was lawfully paroled years earlier and apprehended in the interior after that status lapses. *See Jennings v. Rodriguez*, 583 U.S. 281, 297–98, 303 (2018); *see also Rodriguez Vazquez v. Bostock*, 183 F.4th 1160, 1164-1165 (9th Cir. 2026) (holding that interior-apprehended noncitizens are subject to Section 1226, not Section 1225(b)(2)(A)); *Baptiste v. Bondi*, No. CV-26-02586-PHX-SPL (CDB), 2026 WL 1684433, at *4–5 (D. Ariz. May 21, 2026) (Report and Recommendation) (same, for a CHNV parolee); *Ulloa v. LaRose*, No. 26-cv-4418-JES-BLM (S.D. Cal. Aug. 2026); *Gergawi v. LaRose*, No. 3:25-cv-3352-JES-MMP, 2025 WL 3719321, at *1–4 (S.D. Cal. Dec. 23, 2025).

Petitioner was inspected and paroled at a port of entry in May 2023 and resided in the United States over two and a half years before his arrest in the country's interior, in New York—not at the border. ECF No. 8 at 4, 6 The Court, therefore, concludes that Section 1226(a) governs Petitioner's continued detention.

**C. Absence of a Warrant Preceding Arrest**

Petitioner argues ICE lacked a warrant before his arrest. The record shows an administrative warrant dated January 10, 2026—the same day as his arrest. ECF No. 10-1 at 2. Warrantless arrest is authorized where an immigration officer believes the noncitizen would escape before a warrant issues, and is permitted up to 48 hours to obtain one. 8 U.S.C. § 1357(a)(2); 8 C.F.R. § 287.3(d). Because the warrant was issued contemporaneously with Petitioner's arrest, this ground for release is **DENIED**.

**D. Procedural Due Process**

Petitioner's entitlement to immediate release is warranted under two independent grounds. First, agencies must comply with their own regulations, or their action is unlawful. *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954); *see Mata Velasquez v. Kurzdorfer*, 794 F. Supp. 3d 128, 154 (W.D.N.Y. 2025). Parole may be revoked only upon a determination that its purpose has been served, that its terms were

violated, or upon issuance of a charging document—and, in any case, only after notice and an opportunity to be heard. 8 C.F.R. § 212.5(e)(2). Respondents identify none of these here, and it is undisputed that Petitioner received no notice or hearing before his re-arrest. *See generally* ECF No. 10; *see also Doe v. DHS*, No. 1:25-cv-12245, 2026 WL 880442, at *11 (D. Mass. Mar. 31, 2026) (DHS exceeded its authority by terminating parole through mass revocation without individualized determinations); *Arias v. LaRose*, No. 3:25-CV-02595-BTM-MMP, 2025 WL 3295385, at *2–4 (S.D. Cal. Nov. 25, 2025) (unlawful parole revocation renders subsequent detention unauthorized).

Where DHS terminates parole without complying with these regulatory prerequisites, the resulting detention is unlawful. *See Doe*, 2026 WL 880442, at *11; *Arias*, 2025 WL 3295385, at *2–4.

Second, Petitioner independently acquired a substantial, constitutionally protected liberty interest when he was granted parole, and over two and a half years of tolerated residence—including nearly eight months after his parole technically lapsed—without any changed circumstance justifying his arrest. ECF No. 8 at 5–6; *see Noori v. LaRose*, No. 25-cv-1824-GPC, 2025 WL 2800149, at *10 (S.D. Cal. Oct. 1, 2025); *Morrissey*, 408 U.S. at 482; *Perez v. LaRose*, No. 3:25-CV-02620-RBM, 2025 WL 3171742, at *5, *7 (S.D. Cal. Nov. 13, 2025); *Baptiste*, 2026 WL 1684433, at *7–8 (finding acquisition of protected liberty interest under materially indistinguishable facts).

**E. The Appropriate Remedy is Immediate Release**

Applying the *Mathews* factors, favors release rather than a merely prospective remedy. Petitioner's private interest, like the petitioner in *Baptiste*, is substantial. *See* 424 U.S. at 335. He pursued asylum, complied with the conditions of his release, and committed no crime during his years of liberty in the United States. Pet. at 6–7. The risk of erroneous deprivation was high, because Petitioner's parole was revoked "without providing [him] a reason for revocation or giving [him] an opportunity to be heard." *Salazar v. Casey*, No.: 25-CV-2784 JLS (VET), 2025 WL 3063629, at *4 (S.D. Cal. Nov. 3, 2025). Finally, the Government's interest in detaining Petitioner without notice, reasoning, or a hearing is low,

particularly where, as here, "[s]ince DHS's initial determination that Petitioner should be paroled because [he] posed no danger to the community and was not a flight risk, there is no evidence that these findings have changed." *Perez*, 2025 WL 3171742, at *5.

Moreover, an order directing a bond hearing, where the Government lacked the lawful authority to even detain the noncitizen, cannot adequately remedy the harm. This is so because such a bond hearing "cannot serve as an adequate procedural safeguard" where "it is after the fact and cannot prevent an erroneous deprivation of liberty." *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1324 (W.D. Wash. 2025); *see also Domingo v. Kaiser*, No. 25-cv-05893 (RFL), 2025 WL 1940179, at *3 (N.D. Cal. July 14, 2025) ("[E]ven if Petitioner[] received a prompt post-detention bond hearing under 8 U.S.C. § 1226(a) and was released at that point, he will have already suffered the harm that is the subject of his motion; that is, his potentially erroneous detention.").

Given the Government's inability to establish its compliance with its own regulatory prerequisites to terminate Petitioner's parole, immediate release, rather than a bond hearing, is the appropriate remedy. *See Mata Velasquez*, 794 F. Supp. 3d at 154; *Accardi*, 347 U.S. at 268.

Based on the Court's ruling on the merits, it need not reach Petitioner's immigration-judge-neutrality argument. *See* ECF No. 11 at 4–5.

## IV. CONCLUSION

For the reasons above, the Court **GRANTS** the Petition for Writ of Habeas Corpus and **ORDERS** the following:

(1) Respondents are **ORDERED** to immediately **RELEASE** Petitioner from custody, under the same conditions as previously imposed on his parole, and to **FILE** a Notice of Compliance no later than seventy-two (72) hours from the date of this Order, confirming that Petitioner has been released;

(2) Respondents are **ENJOINED** from re-detaining Petitioner unless he is: provided with prior written notice of the grounds for revocation of his

parole; and given a hearing before a neutral decisionmaker, at which the Government shall bear the burden of proving by clear and convincing evidence that detention is necessary; and

(3) The Clerk of Court is **DIRECTED** to **CLOSE** this case.

**IT IS SO ORDERED.**

Dated: September 21, 2026

Honorable James E. Simmons Jr.
United States District Judge